IN THE UNITED STATES DISTRICT COURT
3FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION


FILED

JUL 10 2017

Clerk, U S District Court
District Of Montana
Missoula

| | |
|---|---|
| MOUNT VERNON FIRE INSURANCE COMPANY, | CV 16–91–M–DLC |
| Petitioner, | ORDER |
| vs. | |
| JACK L. GABELHAUSEN, JR., and the ESTATE OF JUDITH GABELHAUSEN, | |
| Respondents. | |

Before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court will grant Petitioner's motion for summary judgment (Doc. 20) and deny Respondents' motion (Doc. 17).

## BACKGROUND

On March 7, 2014, Jeff Wycoff ("Wycoff") was allegedly catastrophically injured when he fell 25 feet off the edge of an infinity swimming pool at a house on the island of St. Thomas, in the United States Virgin Islands. The home was owned, in part, by Respondents Jack L. Gabelhausen, Jr., and his wife, Judith

Gabelhausen[1] (collectively, "the Gabelhausens"). At the time, the Gabelhausens were renting the St. Thomas property to a third-party for a wedding. It is disputed as to when Jack L. Gabelhausen ("Mr. Gabelhausen") was notified of the accident.

On October 20, 2015, Wycoff filed suit against the Gabelhausens, as well as the co-owner of the St. Thomas property, Jim Schueler ("Schueler"), in the District Court of the Virgin Islands, Division of St. Thomas and St. John. *See Jeff Wycoff v. Jack L. Gabelhausen et al*, Case: 3:15-cv-00070-CVG-RM (D.V.I. Oct. 20, 2015). The complaint in that case alleges that the St. Thomas property was maintained in a dangerous condition by the Gabelhausens and Schueler, and Wycoff was injured as a result. The Court understands that discovery is ongoing in the underlying case. In any event, the case is scheduled to proceed to trial on January 17, 2018.

On the date of the accident, the St. Thomas property was insured by the Gabelhausens through Guardian Insurance ("Guardian") under a "Owners', Landlords' and Tenants' Liability Insurance" policy. (Doc. 19-8 at 1.) The Guardian policy provides coverage for bodily injury and property damage liability, with liability limits of $1,000,000.00 for each occurrence. Guardian was notified

---

[1] Judith Gabelhausen passed away on March 9, 2014. For purposes of this Order, the Court will collectively refer to Mr. Gabelhausen and the Estate of Judith Gabelhausen as the Gabelhausens.

within days of the accident and is tendering a defense to the Gabelhausens and Schueler in the Wycoff lawsuit.

In addition to the Guardian policy, the Gabelhausens had also purchased an insurance policy for personal umbrella liability coverage (the "umbrella policy") with Petitioner Mount Vernon Fire Insurance Company ("Mount Vernon"). (Doc. 19-1.) This umbrella policy was effective from January 29, 2014, through January 29, 2015, and provided $5,000,000 in personal umbrella liability coverage. The Gabelhausens initial application for coverage under the umbrella policy indicated that they owned two "owner occupied" residences: a home in Corvallis, Montana, and a second home in Polson, Montana. (Doc. 22-1 at 7.) According to Mount Vernon, the umbrella policy was initially purchased in 2005, and from 2006 to 2010, the Gabelhausens signed multiple renewal information statements indicating that they only owned the Corvallis and Polson residences. (Doc. 22-2.) Sometime in late 2008 or early 2009, Mount Vernon began to phase out the use of information statements and, instead, began sending the Gabelhausens a summary of the umbrella policy's exposures, as forth in the policy's declarations. Thus, according to Mount Vernon, from January 2007 to January 2014, the policy premiums for the umbrella policy were actuarially based on the insurance company's understanding that the Gabelhausens only owned two residences i.e.,

the homes in Corvallis and Polson.

In 2013, the Gabelhausens sold the Corvallis home. In January of 2014 Mount Vernon revised the umbrella policy based upon its understanding that the Gabelhausens now only owned one residence. It is undisputed that prior to the 2014 policy period, the Gabelhausens provided no notice that they were partial owners of the St. Thomas property. At some point following Wycoff's March 2014 accident, Mr. Gabelhausen requested that the St. Thomas property be added to the umbrella policy. The parties vigorously dispute: (1) the timing of when Mr. Gabelhausen was notified about the accident; and (2) the circumstances surrounding the addition of the St. Thomas property to the umbrella policy.

Nevertheless, effective January 22, 2015, the St. Thomas property was added as an endorsement to the umbrella policy. On February 12, 2016, Mount Vernon received a letter from Mr. Gabelhausen concerning Wycoff's accident and the possible claim. Specifically, Mr. Gabelhausen sent the letter to the insurance brokerage and underwriting firm of Burns & Wilcox, who, in turn, notified Mount Vernon. The parties dispute whether Burns & Wilcox was acting as the Gabelhausens' wholesale insurance broker or as a soliciting agent of Mount Vernon.

In light of Wycoff's accident and the subsequent civil suit, Mount Vernon

filed a petition for declaratory relief pursuant to 28 U.S.C. § 2201(a). This petition requests rescission of the umbrella policy due to Respondents' alleged misrepresentations concerning their ownership of the St. Thomas property. In the alternative, Mount Vernon urges the Court to find that no coverage existed at the time of Wycoff's accident because the Gabelhausens failed to provide notice of their ownership interest in the property, among other arguments. Mount Vernon now moves for summary judgment requesting judgment in its favor.

In contrast, the Gabelhausens contend that Mount Vernon has a duty to defend and indemnify Respondents in the Wycoff litigation in the event they are named in the suit. The Gabelhausens assert that they had a reasonable expectation of coverage under the umbrella policy and timely notified Mount Vernon of the loss. In the alternative, the Gabelhausens argue that Mount Vernon's duty to defend and indemnify are non-justiciable questions, and request that the Court dismiss or stay the matter until the Wycoff litigation has been resolved. Thus, in their cross-motion for summary judgment, Respondents seek judgment in their favor.

## STANDARD

"[W[hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside County,*

*Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation and internal quote marks omitted); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* vol 10A, § 2720, 353 (4d ed. 2016) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.").

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, summary judgment is warranted when the evidence produced by the parties permits only one conclusion. *Mont. Pub. Interest Research Group (MontPIRG) v. Johnson*, 361 F. Supp. 2d 1222, 1226–1227 (D. Mont. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). If the moving party shows that the evidence does not permit a conclusion in favor of the nonmoving party, the burden shifts to the nonmoving party. The party opposing the motion "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The Court looks to "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a

matter of law." *MontPIRG*, 361 F. Supp. 2d at 1227 (citing *Anderson*, 477 U.S. at 251–252).

## ANALYSIS

The parties have put forth multiple argument in support of their cross-motions for summary judgment. Mount Vernon contends that: (1) the umbrella policy should be rescinded based on material misrepresentations by the Gabelhausens concerning the number of residences they owned; (2) coverage does not exist due to Mr. Gabelhausen's failure to comply with the policy's conditions; and (3) coverage does exist because the St. Thomas property was not listed under the umbrella policy.

The Gabelhausens counter that Mount Vernon's duty to defend and indemnify is a non-justiciable question and the Court should stay or dismiss this action until the Wycoff litigation has concluded. However, should the Court find that a justiciable question exists, the Gabelhausens argue that: (1) Mount Vernon has a duty to defend Mr. Gabelhausen; (2) coverage exists because the Gabelhausens had a reasonable expectation that the St. Thomas property was covered under the umbrella policy; (3) Mount Vernon was provided timely notice of the accident and subsequent claim and, even if Mr. Gabelhausen did not provide timely coverage, coverage still exists because there was no prejudice to Mount

Vernon. Because the Gabelhausens' justiciability argument raises a threshold issue concerning the Court's jurisdiction, it will be addressed first.

## A. Jurisdiction

As discussed, the Gabelhausens urge the Court to dismiss or stay this action because the underlying claim for coverage for Wycoff's injuries are actively being litigated in the District Court of the Virgin Islands. The Gabelhausens argue that because no party in that case has raised the issue of Mount Vernon's duty to defend and indemnify under the umbrella policy, the question of whether excess coverage is available in the Wycoff matter is not ripe for decision and therefore a non-justiciable question. The Gabelhausens cite to *Skinner v. Allstate Insurance Company*, 127 P.3d 359 (Mont. 2005), in support of their argument.

In *Skinner*, a carpenter was injured while working on the insureds' house. 127 P.3d at 360. The carpenter brought suit and the insureds filed a declaratory action against their insurer to determine if coverage existed under an umbrella insurance policy. *Id.* The district court found that the insurance company had a duty to indemnify the insureds in the underlying suit in the event that they were found liable for the carpenter's injuries. *Id.* at 361.

On appeal, the Montana Supreme Court reversed the district court and remanded for further proceedings after the finding that the issue of

-8-

indemnification was speculative. *Id.* at 364–365. Because the issue of liability in the underlying case was unresolved, and was inseparable for the issues presented in the insureds' declaratory judgment action, the Montana Supreme Court concluded that the insurance company's duty to indemnify was a non-justiciable question and not ripe for resolution. *Id.* at 363.

The Gabelhausens argue that the circumstances in this case are the same as in *Skinner* and urge the Court to take the same approach as the Montana Supreme Court. Mount Vernon opposes this argument and asserts that because this action was brought pursuant to the Declaratory Judgment Act, *Skinner* is not necessarily controlling. The Court agrees with Mount Vernon, in part.

Mount Vernon filed its petition for relief pursuant to 28 U.S.C. § 2201(a), the Declaratory Judgment Act. (Docs. 1 at 2; 1-1 at 1.) This provision allows a federal court to grant declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). The United States Supreme Court has found that because the Declaratory Judgment Act is procedural in nature, it "does not 'extend' the 'jurisdiction' of the federal courts." *Medtronic, Inc. v. Mirowski Fam. Ventures*, LLC, 134 S. Ct. 843, 848 (2014) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)); *see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the

Declaratory Judgment Act is procedural only."). Rather, cases brought pursuant to the Act must satisfy "both constitutional and prudential concerns." *Govt. Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998). Thus, petitioners seeking declaratory relief must satisfy the "case or controversy" clause under Article III, section 2 of the United States Constitution, as well as statutory jurisdictional requirements. *Dizol*, 133 F.3d at 1222-1223 (citations omitted).

Here, the Court finds that both of these prerequisites under the Act are met. First, the United States Court of Appeals has "consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Id.* at 1222 n.2. Second, the parties do not dispute, and the Court agrees, that diversity subject matter jurisdiction exists in this case because the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

However, even though diversity jurisdiction is not in dispute, a federal court may decline to exercise its jurisdiction under the Declaratory Judgment Act in certain circumstances. *See Snodgrass v. Provident Life and Acc. Ins. Co.*, 147 F.3d 1163, 1166 (9th Cir. 1998) ("Under the Declaratory Judgment Act, a district court may decline to exercise jurisdiction over a declaratory action even though subject matter jurisdiction is otherwise proper."); *see also Wilton v. Seven Falls*

*Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.").

Specifically, when evaluating whether to exercise its jurisdiction under the Declaratory Judgment Act, "courts should generally decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court" unless there are "circumstances present to warrant an exception to that rule." *Am. Nat. Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1019 (9th Cir. 1995), *overruled on other grounds*, *Dizol*, 133 F.3d at 1227 (citation and internal quote marks omitted).

Importantly, an exception to this general rule exists when a party raises "claims that exist independent of the request for" declaratory relief. *Snodgrass*, 147 F.3d at 1167. This includes claims for "bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief." *Dizol*, 133 F.3d at 1225. When these independent claims are present, the district court's obligation to exercise its jurisdiction is "virtually unflagging." *Id.* at 1225 n. 6 (citing *First State Ins. Co. v. Callan Associates, Inc.*, 113 F.3d 161, 162 (9th Cir. 1997). Otherwise, dismissing or "[r]emanding only the declaratory component of such an

action will frequently produce piecemeal litigation, a result which the Declaratory Judgment Act was intended to avoid, rather than promote." *Snodgrass*, 147 F.3d at 1167. Thus, "[t]he appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Id.* at 1167–1168.

Here, in addition to its claim that no coverage exists under the umbrella policy, Mount Vernon also asks requests that the Court rescind the policy due to the Gabelhausens' failure to inform the company about the St. Thomas property. (Doc. 1 at 8.) Thus, even if the Gabelhausens were absolved of liability in the underlying Wycoff litigation, and the issue of coverage for the accident became moot, Mount Vernon's rescission claim would continue in this case. Further, the Gabelhausens have brought counter-claims against Mount Vernon for breach of contract, violations of the Montana Unfair Trade Practices Act, and estoppel. (Doc. 4.) The existence of these claims, in addition to the claim for rescission of the policy, compel the Court to exercise jurisdiction in this case.

Further, in addition to the fact that independent claims for relief exist in this case, the Court stresses that two factors which typically counsel in favor of

-12-

declining to exercise jurisdiction are simply not present in the case at bar. For one, the underlying Wycoff matter is being litigated in federal court, not state court. Thus, because there is no pending parallel state matter pending, the issue of deference to a state court's interpretation of state law is not at issue in this case. *Contl. Cas. Co. v. Robsac Industries*, 947 F.2d 1367, 1370 (9th Cir. 1991), *overruled on other grounds by Dizol*, 133 F.3d 1220 (when there are parallel state and federal declaratory actions, there is a presumption that the federal action should be dismissed in deference to the pending state court proceeding); *see also Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991) (federal courts should avoid unnecessary determinations of state law).

Additionally, as conceded by the parties, Mount Vernon is not a party in the Wycoff litigation and has not been asked, at this point, to tender a defense in that matter. Thus, rescission of the umbrella policy is not at issue in that case and the threat of issuing duplicative or contradictory rulings is not a concern. *Chamberlain*, 931 F.2d at 1367 (when faced with declaratory action pursuant to Declaratory Judgment Act, federal court should decline jurisdiction if hearing petition would result in "duplicitous litigation"). Accordingly, based upon the above factors, the Court finds that Mount Vernon's request to rescind the umbrella policy is ripe for decision and the Court will elect to exercise its jurisdiction to

resolve the matter.

## B. Rescission

As discussed, Mount Vernon contends that the umbrella policy should be

rescinded due to the failure of the Gabelhausens to disclose their ownership

interest in the St. Thomas property. Rescission of an insurance contract is

permitted pursuant to Montana Code Annotated ("MCA") § 33-15-403.

*Steinback v. Bankers Life and Cas. Co.*, 15 P.3d 872, 874 (Mont. 2000) (Montana

Supreme Court affirmed district court's ruling that insurance company was

entitled to rescind policy pursuant to MCA § 33-15-403). Subsection 403(2)

provides that:

> Misrepresentations, omissions, concealment of facts, and incorrect
> statements do not prevent a recovery under the policy or contract
> unless:
>    (a) fraudulent;
>    (b) material either to the acceptance of the risk or to the hazard
> assumed by the insurer; or
>    (c) the insurer in good faith would either not have issued the
> policy or contract or would not have issued a policy or contract in as
> large an amount or at the same premium or rate or would not have
> provided coverage with respect to the hazard resulting in the loss if
> the true facts had been made known to the insurer as required either
> by the application for the policy or contract or otherwise.

Mont. Code. Ann. § 33-15-403. "Thus, a misrepresentation, omission,

concealment of fact or incorrect statement will prevent recovery under an

-14-

insurance policy if one of the three factors listed in subsection (2) is present."
*Schneider v. Minnesota Mut. Life Ins. Co.*, 806 P.2d 1032, 1035 (Mont. 1991)

Mount Vernon asserts that rescission of the umbrella policy is warranted under MCA § 33–15–403(2)(c),[2] because in good faith, it would not have issued the umbrella policy at the same premium if the Gabelhausens would have disclosed their ownership interest in the St. Thomas property as required by the application for the policy and the policy itself. In support of its argument, Mount Vernon has submitted an affidavit from Brian Hogan ("Hogan"), Vice President-Product Team Personal Lines for United States Liability Insurance Group ("USLI"). (Doc. 22-2.) Mount Vernon is an underwriting company owned by USLI. In his affidavit, Hogan affirms that the Gabelhausens did not provide notice of the St. Thomas property until after the March 2014 accident. Thus, according to Hogan, the policy premiums from January 2007 to January 2015 did not take into account the Gabelhausens' ownership interest in the St. Thomas property. Hogan further affirms that had Mount Vernon known about the St. Thomas residence, "it would have charged [Mr.] Gabelhausen an additional

---

[2] Mount Vernon also argues that it is entitled to rescind it policy under MCA § 33–15–403(2)(b). However, as discussed *infra*, because the Court finds that Mount Vernon is entitled to rescission under MCA § 33–15–403(2)(c), it will not address its arguments pertaining to subsection (2)(b).

-15-

premium of $34 to reflect the underwriting risk of owning" the St. Thomas property.[3] (Doc. 22-2 at 3–4.) Because it is undisputed that the Gabelhausens bought the St. Thomas property in 2006, and did not provide notice of the home until after the 2014 accident, Mount Vernon contends that rescission of the umbrella policy is warranted as a result of the Gabelhausens' material misrepresentations or omissions concerning the number of residences they owned.

The Gabelhausens offer four arguments why summary judgment is not appropriate under MCA § 33–15–403(2)(c). First, questions of materiality and good faith are questions of fact and must be decided by a jury. Second, the term "residence" in the umbrella policy is ambiguous and this ambiguity prevents a finding that the Gabelhausens misrepresented the number of residences they owned. Third, even if the Court finds that a material misrepresentation exists, the misrepresentation was caused by the errors of Mount Vernon's purported agents, Burns & Wilcox, which prevents a finding of summary judgment in favor of Petitioners. Finally, Mount Vernon was placed on "inquiry notice" of the St.

---

[3] The Court acknowledges that the increase in premium, $34, is relatively insignificant in the great scheme of things. Even assuming that an additional premium would have been charged for every year the Gabelhausens owned the St. Thomas property, for a total of $271, this additional amount remains insignificant, and presumably would have willingly been paid by the Gabelhausens. However, these facts do not alter the analysis— the Gabelhausens failed to give Mount Vernon notice of the ownership of the St. Thomas property until after the loss was incurred in this case.

Thomas property and thus summary judgment in favor of Petitioner is precluded under Montana law. The Court will address each argument in turn.

## 1. Materiality and Good Faith

As mentioned, the Gabelhausens contend that summary judgment in favor of Mount Vernon is not appropriate under MCA § 33–15–403(2)(c), because factual questions remain that should be addressed by a jury. Specifically, the Gabelhausens contend that factual questions remain as to: (1) whether the Gabelhausens' failure to disclose the St. Thomas property was a material misrepresentation; and (2) whether Mount Vernon, in good faith, would have charged a higher premium for the umbrella policy had it known about the St. Thomas property. Based on the undisputed facts, the Court disagrees with the Gabelhausens on both points.

Under MCA § 33–15–403(2), "[a]n omission or misrepresentation may be material if, had the truth been known, the reasonable and prudent insurer would not have issued the policy or would have issued it at a higher premium." *Schneider*, 806 P.2d at 1035 (citation omitted). The Montana Supreme Court has found that, in terms of materiality, the primary difference between subsections 2(b) and 2(c) "is that (2)(b) deals with an objective standard of materiality, reasonableness, while (2)(c) refers to a subjective standard, good faith." *Id.* Thus,

as applied here, the Gabelhausens' failure to disclose the St. Thomas property was a material omission if, had Mount Vernon known about the property, it would have issued the umbrella policy at a higher premium. As mentioned, Mount Vernon has provided undisputed evidence in the form of Hogan's affidavit that it would have increased the Gabelhausens' premium by at least $34 if it had known the actual number of residences owned by the Gabelhausens.

Despite this undisputed fact, the Gabelhausens contend that questions of materiality must always go to a jury and cites to *Schneider v. Minnesota Mutual Life Insurance Company*, *supra*, and *Williams v. Union Fidelity Life Insurance Company*, 123 P.3d 213 (Mont. 2005). However, the Court finds that these cases are distinguishable from the matter at bar and are thus not controlling to the Court's decision.

In *Schneider*, an insurance company denied life insurance coverage after concluding the decedent incorrectly completed an insurance application. *Schneider*, 806 P.2d at 1034. Specifically, the decedent answered "no" to a question which asked if he had "been hospitalized or . . . consulted a physician or physicians for any reason," within three years of the application. *Id.* In actuality, the decedent had visited a doctor numerous times in the previous year and was ultimately diagnosed with alcoholism and depression. Based upon this perceived

-18-

material misrepresentation, the insurance company rejected coverage after determining that, had it known about the decedent's medical history, it would have denied coverage. The decedent's widow instituted a claim for breach of contract, and the district court entered judgment in her favor following a bench trial. *Id.*

On appeal, the Montana Supreme Court affirmed the district court's entry of judgment after concluding that the insurance company failed to carry its burden at trial that it was entitled to rescind the policy under MCA § 33–15–403. *Id.* at 1037. Importantly, as discussed by the *Schneider* Court and in contrast to this case, genuine disputes of material fact existed as to whether the insurance company would have issued the policy had it known about the decedent's full medical history. Those issues of fact were resolved by the trial court and affirmed by the Montana Supreme Court, which found that credible evidence supported the district court's findings that the insurance company could not rescind because no material misrepresentation was made by the decedent. *Id.* at 1035–1037.

Here, unlike the insured in *Schneider*, the Gabelhausens have failed to put forth any competing evidence that Mount Vernon would not have charged a higher premium for the umbrella policy had it known about the St. Thomas property. The Gabelhausens suggest that Mount Vernon is speculating as whether the premium would have gone up and cite to Hogan's deposition. However, the Gabelhausens

mischaracterize Hogan's testimony as he clearly testified that the addition of the St. Thomas property would have warranted and resulted in an increased premium.

The Gabelhausens also cite to *Williams v. Union Fidelity Life Insurance Company* in support of their argument that questions of materiality must always go to a jury. The Court finds this authority to be equally unavailing. In *Williams*, an insurance company denied coverage for a credit life insurance policy after determining the decedent had misrepresented his health. *Williams*, 123 P.3d at 217. The application for the insurance asked if the applicant was in "good health" and the decedent certified that he was. *Id.* at 217–217. However, after his death and a claim for benefits was made, the insurance company discovered that the underlying cause of death was "renal cell carcinoma with metastasis which had existed for years." *Id.* at 217 (internal quote marks omitted). Based upon this information, the insurance company rescinded the policy and the decedent's widow filed suit for breach of contract. The parties filed cross-motions for summary judgment, which the district court denied after concluding that several genuine issues of material fact remained for trial. *Id.*

On appeal, the Montana Supreme Court affirmed the denials of the cross-motions for summary judgment. *Id.* at 220. The *Williams* Court agreed with the district court that issues of fact remained as to whether the decedent's signature on

the application was a misrepresentation, and, if it was, whether it was material. *Id.* at 220. Important to the Court's ruling was the fact that the application did not define "good health." *Id.* at 119. Thus, because the term was arguably ambiguous, issues of fact remained as to whether the decedent misrepresented whether he believed he was in good health. *See id.* at 220.

Again, unlike *Schneider*, here there are no genuine disputes of fact that would preclude the entry of summary judgment. The parties do not dispute that the Gabelhausens misrepresented the number of residences they owned, only that this misrepresentation was material. However, as discussed above, the misrepresentation was material if, had Mount Vernon known about the St. Thomas property, it would have issued the policy under a higher premium. Mount Vernon has satisfied its initial burden and put forth evidence that it would have charged a higher premium. The burden now shifts to the Gabelhausens to dispute this fact and they have failed to do so. Therefore, the Court disagrees with the Gabelhausens that the issue of materiality and good faith must be resolved by a jury.

## 2. Ambiguity of the Term "Residence"

The Gabelhausens also contend that rescission of the umbrella policy is precluded because the term residence is ambiguous. When renewing coverage for

the umbrella policy, the Gabelhausens were required to execute renewal information forms which asked if their "primary residence [had] changed" since the previous policy had been issued. (Doc. 25-3.) This form also listed the "# of Residences" under the policy as "2." (*Id.*) The Gabelhausens assert that because the form did not define "primary residence" or "Residences," these terms are ambiguous, and the ambiguity must be resolved in their favor.

"The interpretation of an insurance contract is a question of law." *Park Place Apartments, L.L.C. v. Farmers Union Mut. Ins. Co.*, 247 P.3d 236, 239 (Mont. 2010). A court is bound to interpret the terms of an insurance policy "according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Counterpoint, Inc. v. Essex Ins. Co.*, 967 P.2d 393, 395 (Mont. 1998). If the language of the policy is clear and explicit, a court may not rewrite it and must enforce the policy as written. *Counterpoint, Inc.*, 967 P.2d at 395. Thus, "courts will not distort contractual language to create an ambiguity where none exists." *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont. 2009). Accordingly, a court must "read the policy as a whole and, if possible, . . . reconcile its various parts to give each one meaning and effect." *Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021, 1025 (Mont. 2008).

The Court agrees with the Gabelhausens that the policy renewal forms do not define "residence." (*See* Doc. 25-3.) However, the policy itself clearly provides a definition for "Residence," and states that:

> Residence means:
> 1. A one to four family dwelling, including other structures and grounds where you reside in a least one of the family units;
> 2. The unit where you reside in a condominium or cooperative apartment;
> 3. That part of any other building not stated in 1. or 2. where you reside;
> 4. A one to four family dwelling, individual condominium or cooperative unit you own which is rented or leased to others; or
> 5. Vacant land owned by the named insured.

(Doc. 19-1 at 9.) This definition clearly encompasses the St. Thomas property under either subsections 1 or 4. Thus, a reasonable consumer of insurance, after reading this policy in conjunction with the renewal forms, would undoubtedly recognize that the St. Thomas property qualifies as a residence and must be listed in order to receive coverage. Consequently, the Court finds that the term "residence" is unambiguous.

The Court also notes this definition precludes the Gabelhausens' secondary argument that a reasonable consumer of insurance would be confused by the term "residence" because, under the laws of Montana, a person may only have one residence. *See First W. Fed. Sav. Bank v. Lence*, 839 P.2d 1277, 1280 (Mont.

1992) (in the context of a deficiency judgment, a person may only have one protected residence under Montana law); *see also* Mont. Code. Ann. § 1–1–215 ("Residence--rules for determining"). However, despite this authority, which is inapposite to the context of insurance law, the Court finds that this interpretation is not reasonable due to the fact that the Gabelhausens' policy allowed for more than one residence. Indeed, from 2005 to 2014, the policy did in fact cover more than one residence, i.e., the Polson and Corvallis homes. Thus, this argument is not persuasive to the Court.

Finally, the Court notes that a reasonable consumer of insurance, after reading the umbrella policy, the policy renewal forms, and a summary of the policy's exposures, would certainly take note of the number of residences insured under the policy. Put another way, a reasonable consumer of insurance who believes that three residences are listed under umbrella policy would take note of the fact that only two residences are listed. It is just as unreasonable to expect coverage for three homes when only two are clearly listed. Thus, the Court rejects Gabelhausens' ambiguity argument.

### 3. Burns & Wilcox

Next, the Gabelhausens argue that, even if this Court concludes that a material misrepresentation exists, summary judgment is still not appropriate

because any misrepresentation made was due to the error of Mount Vernon's purported agent, Burns & Wilcox. Specifically, the Gabelhausens contend that, because Burns & Wilcox pre-filled the renewal information forms and presented them to the Gabelhausens for their signatures, it was responsible for ensuring that the forms were complete and accurate.

However, even if some agency relationship existed between Burns & Wilcox and Mount Vernon, of which the Court is skeptical, the Gabelhausens fail to pinpoint any error made by Burns & Wilcox, aside from the argument that the firm should have done more to discover the existence of the St. Thomas property. Further, as discussed above, the Gabelhausens knew the number of homes they wanted covered, and it is only reasonable that to procure coverage for these properties, they must notify their insurer that these properties were in existence. The Court thus rejects this argument because there is no evidence before the Court that the Gabelhausens disclosed the St. Thomas property to Burns & Wilcox prior to 2014, or even indicated that such a property existed.

### 4. Inquiry Notice

Finally, the Gabelhausens contend that the Court should find that Mount Vernon waived it right to rescind the umbrella policy because the company was on "inquiry notice" of the St. Thomas property. Specifically, the Gabelhausens assert

that after the request was made to add the St. Thomas property to the umbrella policy in January of 2015, Mount Vernon should have made further inquires into the Gabelhausens' ownership history. If Mount Vernon would have done so, the Gabelhausens contend, the company would have discovered that the Gabelhausens owned the property since 2006 and that a claim had been filed with Guardian. The Court is not persuaded by this argument.

Pursuant to an "'inquiry notice' argument, an insurance policy is not avoided if the insurer knows the facts or the falsity of the statements or has sufficient indications that would put a prudent person on notice so as to induce inquiry which, if done with reasonable thoroughness, would reveal the truth." *Steinback v. Bankers Life and Cas. Co.*, 15 P.3d 872, 874 (Mont. 2000). Here, the material misrepresentation was made before Mount Vernon was placed on notice of the St. Thomas property. At the time the material misrepresentation was made, i.e., when the Gabelhausens indicated on their renewal forms that they only owed two residences, Mount Vernon had no indication that it was not true. Indeed, Mount Vernon only became aware of the St. Thomas property after the misrepresentation had occurred. Thus, the timing of events in this case is distinguishable from other cases where a court has concluded that an insurance company was on "inquiry notice" of an insured's false statement. *See e.g. Ahmann*

*v. Minnesota Mut. Life Ins. Co.*, 83 Fed. Appx. 958 (9th Cir. 2003) (unpublished)

(insurer was on inquiry notice of insured's misrepresented medical history when,

at the time the insured completed an application for the life insurance policy, the

insurer's agent knew the insured had suffered a back injury). Thus, based upon

the undisputed facts of this case, the Court rejects the Gabelhausens' inquiry

notice argument.

## CONCLUSION

Accordingly, because the Court finds that Mount Vernon is entitled to

rescind the umbrella policy under MCA § 33–15–403(2)(c), the Court will grant

Mount Vernon's motion for summary judgment.[4]  Further, because the policy will

be rescinded, the Court will deny the Gabelhausens' cross-motion for summary

judgment which argues for coverage under the policy.

IT IS ORDERED that Petitioner Mount Vernon Fire Insurance Company's

Motion for Summary Judgment (Doc. 20) is GRANTED.

IT IS FURTHER ORDERED that Respondents' Motion for Summary

---

[4] In concluding that Mount Vernon is entitled to rescind the umbrella policy, the Court notes that its holding is limited to the specific facts of this case.  Importantly, the Court finds that the Gabelhausens' misrepresentation concerning the number of residences owned was material because they are seeking coverage for a home in which they failed to provide notice of their ownership interest. Thus, under different circumstances, such as when an insured seeks coverage for a home clearly listed on an insurance policy, that policy should not be rescinded merely because the insured owns property not included under the policy, and for which no coverage is being sought.

Judgment (Doc. 17) is DENIED.

IT IS FURTHER ORDERED that the current trial schedule in this matter and all pending deadlines are VACATED.

THIS CASE IS CLOSED.

Dated this 10th day of July, 2017.

Dana L. Christensen, Chief Judge
United States District Court